IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MELISSA WEATHERSBY | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | § CIVIL ACTION NO._5:24-cv-01422_ |
| | § |
| ALAMO COMMUNITY | § |
| COLLEGES DISTRICT | § |
| | § |
| *Defendant.* | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF, **MELISSA WEATHERSBY** ("Plaintiff" or "Weathersby"), complaining of DEFENDANT **ALAMO COMMUNITY COLLEGES DISTRICT** ("Defendant" or "ACCD"), and files this Original Complaint. Plaintiff asserts claims for race and sex discrimination, harassment, and retaliation in violation of Title VII and the Texas Labor Code, and violations of the Equal Pay Act and violations of Texas Government code §659.001. In support thereof, Plaintiff would show the Court as follows:

**I.
PARTIES**

1. Plaintiff **MELISSA WEATHERSBY** is an individual residing in San Antonio, Texas within the Western District of Texas, San Antonio Division. She

1

worked for Defendant in San Antonio, Texas, and all relevant events occurred in San Antonio, Texas within this Court's District.

2.  Defendant **ALAMO COMMUNITY COLLEGES DISTRICT** is a public college district and is a governmental entity and political subdivision of the State of Texas. It may be served with process by the Clerk of the Court by certified mail by serving its Chancellor, Dr. Mike Flores at 2222 North Alamo Street, San Antonio, Texas 78215.

## II.
## JURISDICTION AND VENUE

3.  This Court has jurisdiction to hear the merits of Plaintiff's Title VII, and Equal Pay Act claims due to the federal question raised pursuant to 28 U.S.C. §1331.

4.  This Court has supplemental jurisdiction over Plaintiff's state law claims under the Texas Commission on Human Rights Act and Texas Government Code pursuant to 28. U.S.C. §1331.

5.  All of the acts alleged herein occurred in San Antonio, Bexar County, Texas, and are within the jurisdiction and district of this Court.

## III.
## MISNOMER/MISIDENTIFICATION

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such

parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## RESPONDEAT SUPERIOR

7. Employees involved in this cause of action were, at all times described herein, employees of Defendant and were always acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of *Respondeat Superior*.

## V.
## FACTS

1. Plaintiff Melissa Weathersby is African American.

2. Weathersby first worked for ACCD from 2006 until July 2, 2012. She returned to ACCD in 2014 and became a Faculty Instructor (Real Estate) at San Antonio College on or about July 8, 2019.

3. E.O. was a student who enrolled in Weathersby's class.

4. On or about July 6, 2022, E.O. brought a TREC transcript showing continuing education ("CE") work that he wanted college credit for. Both the administrative assistant Jackie Hernandez and Weathersby told E.O. that he could not get credit for the CE work. E.O. met with the Dean Jon Lee and the Dept. Chair Val Calvert and was told by Lee that the catalog said SAC offered Credit for Prior

3

Learning (CPL) or Credit by Non-Traditional Means. However, they did not have a process for that information. On July 25, 2022 Calvert requested a meeting with the VP of College Services and the VP of Student Success to try to get clarity. However, they were ignored. Weathersby followed up on August 16, 2022, and September 7, 2022, but got no response.

5. E.O. came to Weathersby's office again on September 7, 2022, and was very agitated about the credit. Weathersby told him to speak with the VP of College Services and VP of Student Success because she was not able to give him credit. When Weathersby informed E.O. that he would not be able to get the credit he wanted, he became menacing towards her. This began a pattern of E.O. bullying, harassing, and intimidating his way into Weathersby's office and the Administrative Offices to express his anger at not being given the credits.

6. Weathersby repeatedly told the Administration about how E.O. would come to her office and get loud, threatening, argumentative, and aggressive with Weathersby when she would tell him that she did not have the authority to grant him credit for non-college CE credit from a defunct real estate school or other CE classes.

7. Despite these refusals, E.O. persisted in harassing and intimidating Weathersby.

8. E.O. began to stalk the parking lot, the building Weathersby worked in and the elevator on the third floor of the building to find out when Weathersby was in her office.

9. E.O. also began to tell Weathersby that he had looked her up on line and began to ask her questions about her personal life, which Weathersby took as a threat based on E.O.'s behavior towards her. She was so concerned that she had security cameras installed around the outside of her home.

10. On or about September 28, 2022, Weathersby emailed Dr. Lee again because he had not responded to her email telling Lee she did not feel safe around E.O.

11. E.O. sent an email to Weathersby on October 7, 2022, asking if she was in her office. She stayed home as a result and scheduled an appointment with HR.

12. Weathersby went to Joffre Miller in HR to discuss the situation and spoke to the Dean, Dr. Jonathan Lee. Lee told Weathersby that he didn't feel threatened by the student and offered Weathersby EAP resources. After the meeting Lee said "I have to be careful how I say this because it could be considered discrimination, but I know the student, and he isn't any threat to you at all."

13. On or about October 25, 2022, Weathersby met with Dr. Lee and E.O. Weathersby had sent Lee an email detailing the E.O.'s transcript and suggesting that he should only get credit for one of the courses. Dr. Lee stated that Dr. Lovato had

said that if E.O. had a license and he could get 18 hours of college credit. Weathersby was confused as to why E.O. was being given credit for a 17 year old real estate license.

14. In January 2023, the Registrar rejected the credit on E.O.'s transcript because there was not supporting documentation. Weathersby saw Lee getting frantic because the student became more and more agitated and loud about getting the credit.

15. On January 12, 2023, Lee met with Weathersby and Calvert about how to "fix" the problem. Lee said he had agreed to give E.O. 18 hours of credit in the October 25 meeting. Weathersby reminded him that she had recommended only one course credit because she had no authority to grant or substitute coursework.

16. Iannelli and Lee told E.O. to bring in his paperwork so "Dr. Weathersby" could assess it, putting the burden on her. Weathersby did not want to be a part of decision making with E.O.

17. On January 18, 2023, Weathersby met with Iannelli and Dr. Tiffany Cox-Hernandez, the VP of Student Success to voice her concerns about the student. Weathersby told them that she feared for her safety if E.O. was unhappy.

18. On January 23, 2023, she was again asked to review E.O.s records, which were manuals from a defunct real estate school. Weathersby went back to

HR on January 24, and 27 because of her concerns. She did not make administrative decisions but wanted her to take the fall when E.O. was denied credit.

19. Weathersby frequently saw the student and believed that he was following her to different places on campus. She began to get panic attacks as a result of how threatened she was by E.O. She repeatedly told HR that she felt her safety was threatened and that her life was in danger. However, after the third time she went to HR she was told she should take a "Student Behaviors Training" because "maybe you are overreacting." Weathersby complained that Dr. Lee was creating a hostile work environment since he knew she was afraid of the student. Weathersby responded that she was afraid and had had cameras installed at the exterior of her home because she believed she was being stalked.

20. On January 27, 2023, Weathersby submitted a harassment claim to the EEOC.

21. On February 6, 2023, Weathersby met with Dr. Solis and Dr. Calvert and voiced her concerns about being put into a position of reviewing and denying material that she had already said didn't meet standards. Solis told her that they really didn't have a procedure in place for Credit for Prior learning.

22. On or about March 24, 2023, a meeting was held with Calvert, Iannelli, Lee, and Solis to discuss E.O. At another meeting on March 27, 2023, they discussed the CPL requirements for real estate. The standards for CPL required an active

license and E.O.'s had been inactive since 2016. However, on March 28, 2023, Iannelli and Solis decided that the term "active" should be changed to "current." Weathersby disagreed. When they met with E.O. later that day he refused to sign off on the credit because he had been told about 18 hours. E.O. demanded a meeting with the college president Dr. Naydeen.

23. On March 31, 2023, the college had active shooter training. Afterwards Weathersby approached the campus safety director, Gerald Dove and told him she was concerned about a stalker. He told her to speak with Sgt. Jacob Escobedo. When she told Escobedo the student was E.O. he responded "Oh yes. I know the guy. I'm meeting with him tomorrow. He usually hangs out and smokes across from your building."

24. In May 2023, Iannelli, Lee and Gonzalez-DeJesus met with E.O. and told him he would get 18 hours of credit.

25. On July 19, 2023, Weathersby got a call from Dr. Naydeen telling her that E.O. was hyper-aggressive with her staff. Naydeen said she had been away from her office and that E.O. had a "meltdown" when he could not speak with her and they were forced to lock down their suites and campus police were called. Weathersby told Naydeen that E.O. made her afraid by looking her up online, stalking her floor, and watching the elevator and parking lot. Weathersby also said

she had been to HR numerous times and to the Deans and VPs. Naydeen said she would follow up with HR.

26. On August 23, 2023 there was an in person meeting with Dean Dr. Sitakanta Mohanty and Val Calvert OAC in the conference room after a convocation event. There was discussion about E.O. and his bully tactics for getting free college credit. He tried to bully Dr. Mohanty.

27. On August 24, 2023, Weathersby met with Dr. Mohanty, Dr. Calvert, and the VP of Academic Success, Dr. Rincones, regarding E.O. and him still wanting free credit or additional credit. They wanted to discuss the possibility of him getting "work credit" for the Real Estate Co-Op course. Weathersby told them he didn't have any previous or current work history to justify it but they'd already given him 18 hours of credit.

28. Dr. Rincones said that the residency requirement wasn't strong enough on the website we published in March and that it didn't specifically say "residency in the real estate program" so E.O. was able to get out of taking RELE 1200 and RELE 1319 which show as requirements. Weathersby told both of them about her fear and anxiety about E.O. Dr. Rincones said, "Yes, he is ill. Yes, he is a bully. Yes, he lies. He was just here this morning crying about how many hours he was taking to try to graduate. I have to have a standing Thursday morning appointment with him, and we call the police whenever we meet with him. He even asked why the

police were called, and I told him it's to keep him safe and keep us safe." "The president told me it was my job to keep him out of her office, and she keeps her suite locked. Just call the police if you feel afraid." Weathersby told her she felt afraid now that she knew he had looked her up online. Weathersby was shocked and discouraged. E.O. had a pattern of harassing minority women. Weathersby was both black and a woman. Weathersby felt that she was being ignored and her mistreatment was being allowed because she was black and a woman.

29. On or about October 16, 2023, Weathersby gave Dr. Calvert her RELE 2380 Syllabus. This was given to E.O.

30. On November 2, 2023, Weathersby began seeing a counselor for anxiety resulting from the treatment by E.O. and the district and its representatives ignoring and disregarding her complaints and mistreatment by the district.

31. In the week of November 17, 2023, E.O. registered for Weathersby's spring 2024 course. On November 21, 2023, E.O. was seen hanging out near Weathersby's office watching the elevator.

32. E.O. t had been allowed to register for her spring 2024 course despite the fact that he had been given multiple substitution options. As a result, Weathersby had no choice but to resign. She submitted her resignation on January 5, 2024.

33. In 2018, Weathersby replaced a male professor who was making $101,000.00 per year. Despite the fact that she did the same work as that male

professor, she was only paid $69,420.00 per year plus a stipend. Moreover, Weathersby contends that by comparing the pay for other similarly situated teachers and faculty members, the evidence will demonstrate that she was paid less than other comparable male instructors and professors.

## VI.
## CAUSES OF ACTION

### SEX DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION FOR REPORTING SEX DISCRIMIANTION IN VIOLATION OF TITLE VII

8. Plaintiff has satisfied all procedural requirements and conditions precedent of Title VII prior to filing this claim. Plaintiff timely filed her charge of discrimination against ACCD with the Equal Employment Opportunity Commission, asserting claims of sex discrimination, race discrimination, age discrimination, harassment, and retaliation.

9. Plaintiff received her EEOC right to sue letter, and timely files this suit.

10. Plaintiff realleges and incorporates the factual allegations above as if fully stated herein.

### COUNT 1 – SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

11. The evidence will show that Defendants sexually harassed, allowed sexual harassment and discriminated against her based on her sex in violation of Title VII and the Texas Labor Code. Specifically, the evidence will show that:

    a. Plaintiff is a member of a protected class based on sex. (female).

    b. Plaintiff was qualified for the position she held with Defendant.

    c. Plaintiff was subject to an adverse employment action. (Constructive Discharge).

    d. Defendant allowed Plaintiff to be subjected to E.O.'s behavior which men were not subjected to, leading to her constructive discharge. Defendant blamed Plaintiff, telling EEOC "The Charging Party contributed to the student's behavior by opposing his requests for academic credit based on work experience."

## COUNT 2 – RETALIATION FOR REPORTING SEX DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII AND THE TEXAS LABOR CODE

12. The evidence will show that each Defendant retaliated against Plaintiff because she complained about sex discrimination, in violation of Title VII and the Texas Labor Code. Specifically:

    a. Plaintiff engaged in protected activity. (Reporting sexually discriminatory and harassing conduct by E.O.).

    b. An adverse employment action occurred. (Plaintiff was made to be responsible for denying E.O. credit which Defendant knew would anger E.O. after Plaintiff had stated she did not want to be involved with E.O. due to safety. Plaintiff was constructively discharged terminated by Defendant).

    c. A causal link exists between the protected activity and the adverse employment action. (Defendant downplayed Plaintiff's complaints and blamed her for E.O.'s actions. Defendant blamed Plaintiff, telling EEOC "The Charging Party contributed to the student's behavior by opposing his requests for academic credit based on work experience.")

13. Plaintiff realleges and incorporates the factual allegations above as if fully stated herein.

### COUNT 3 – RACE DISCRIMINATION IN VIOLATION OF THE TEXAS LABOR CODE AND TITLE VII

14. The evidence will show that Defendant ACCD discriminated against Plaintiff based on her race in violation of the Texas Labor Code and Title VII. Specifically, the evidence will show that:

    a. Plaintiff is a member of a protected class based on race. (African American).

    b. Plaintiff was qualified for the position she held with Defendant.

    c. Plaintiff was subject to an adverse employment action on account of her race. (E.O.'s harassment was targeted at minorities, Defendant refused to take corrective action leading to the constructive discharge).

### COUNT 4 – RETALIATION FOR ENGAGING IN PROTECTED CONDUCT BASED ON RACE IN VIOLATION OF THE TEXAS LABOR CODE AND TITLE VII

15. The evidence will show that Defendant ACCD retaliated against Plaintiff based on her engaging in conduct that is protected under the Texas Labor Code and Title VII when she made complaints of race discrimination. Specifically, the evidence will show that:

    a. Plaintiff engaged in protected activity. (bringing complaints about less favorable treatment being subjected to E.O.'s behavior).

    b. An adverse employment action occurred. (Constructive discharge).

    c. A causal link exists between the protected activity and the adverse employment action. (Defendant did not correct E.O.'s behavior and sought to placate him rather than protect Plaintiff, Defendant blamed Plaintiff, telling EEOC "The Charging Party contributed to the student's behavior by opposing his requests for academic credit based on work experience." Defendant claimed Plaintiff never complained about E.O. or said she was threatened when she did so on multiple occasions.)

## COUNT 5 – VIOLATIONS OF SECTION 659.001 OF THE TEXAS GOVERNMENT CODE AND THE EQUAL PAY ACT

16. The evidence will show that:

    a. Defendant is an employer subject to Tex. Gov't Code §659.001 and the Equal Pay Act;

    b. Plaintiff performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and,

    c. Plaintiff was paid less than employees of the opposite sex providing the basis of comparison.

## VII.
## ATTORNEY'S FEES

17. It was necessary for Plaintiff to retain the services of the undersigned attorney to prosecute this action. Plaintiff is entitled to recover the reasonable and necessary attorney's fees, expert fees and court costs to prosecute this action as authorized under Title VII, TCHRA and Texas law. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

    a. Preparation and trial of the claim, in an amount the jury deems reasonable;

    b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

    c. An appeal to the 5th Circuit Court of Appeals, in an amount the jury deems reasonable;

    d. Making or responding to an Application for Writ of Certiorari to the Supreme Court of the United States, and attorneys' fees in the event that application for Writ of Certiorari is granted, in an amount the jury deems reasonable; and,

    e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## VIII.
## DAMAGES

18. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant:

    a. Lost wages in the past and future. Wages under Tex. Gov't code 691.001 and the Equal pay act

    b. Compensatory damages for mental anguish and inconvenience related to the ADA, and TCHRA claims.

    c. All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

    d. All reasonable and necessary costs incurred in pursuit of this suit;

    e. Expert fees as the Court deems appropriate;

    f. Pre and Post judgment interest as allowed by law;

## IX.

## JURY DEMAND

19. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon a final hearing hereof, a judgment be rendered for Plaintiff and against the Defendant, for the actual damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, pre-judgment interest, post-judgment interest, liquidated damages, and for such other and further relief to which Plaintiff may be justly entitled.

/s/   *Adam Poncio*
**Adam Poncio**
**State Bar No. 16109800**
aponcio@ponciolaw.com
**Alan Braun**
**State Bar No. 24054488**
abraun@ponciolaw.com

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 310**
**San Antonio, Texas  78229**
**Telephone: (210) 212-7979**

**Facsimile:   (210) 212-5880**

**ATTORNEYS FOR PLAINTIFF**